UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Mynor Giron, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-10-231 |
| | § | |
| Intermarine LLC, *et al.*, | § | |
| | § | |
| Defendants. | § | |

# Opinion on Summary Judgment

1.    *Introduction.*

When the deck in a ship's hold shifted, a longshoreman fell. For eighteen months after he sued, he said that the ship was responsible because its crew improperly installed the deck. After the ship debunked his theory, he abandoned it. He now says the ship did not warn him of a latent danger. The ship will prevail.

2.    *Background.*

On November 8, 2009, the MV *Industrial Crescent* was in Callao, Peru. Sixteen empty containers were loaded in its third hold – six on the lower deck and ten on the tweendeck. The tweendeck – a deck between the main deck and the lower deck – consists of eleven removable panels that rest on retractable brackets so it can be easily removed to unload the cargo on the lower deck. Each container was secured to the deck by four mechanical twistlocks.

The *Industrial Crescent* arrived in Houston on November 28. One day later, Mynor Giron – a longshoreman – was helping discharge containers from the tweendeck. He was standing on top of a container, attaching a harness that allowed it to be lifted by a crane. When the deck beneath the container shifted, he fell roughly ten feet. He fractured his back, ankle, and wrists.

3.    *Installation.*

Giron originally said that the ship was responsible for his fall because it had improperly installed the tweendeck panel that shifted. He said that some of the retractable brackets were not extended when the tweendeck was loaded in Peru. Because of this latent defect, the aft-starboard corner of a tweendeck panel shifted down and the forward-port corner shifted up.

After this case had been pending for eighteen months, Giron abandoned this theory. He has not moved to amend his petition, but he says in his response to the ship's motion for judgment that he "does not expect to try the case on the theory that the vessel's tween deck was improperly installed."

Giron says that he asked the court to amend during a conference on February 28, 2011. The court does not recall what was said and there is no transcript. In the wake of the conference, Giron did not move to amend his petition. He had already amended his petition three times. By waiting to announce that he was abandoning his pleaded theory of the case until after the defendants moved for summary judgment, he again imposed unnecessary costs on the defendants and the court.

If Giron had not abandoned his original theory, he would have lost. The ship's officers and its technician credibly testified that if a retractable bracket under the deck had been improperly installed, the crew would have noticed that the tweendeck panel was not level. They also would have observed it tilting earlier in the voyage.

4.    *Warning.*

Roman Alatortsev was the only member of the ship's crew to observe the incident. When Giron fell, the tweendeck held two containers. Alatortsev says that both were lifted simultaneously while their aft twistlocks were still attached to the deck. He says that the brackets supporting the tweendeck panel retracted when the attached containers were lifted by the crane. When the containers were lowered, he says that the newly unsupported tweendeck shifted and Giron fell. According to him, the deck tilted only once.

The longshoremen disagree. According to them, they lifted one container to slam it into the other one in an attempt to free it. They say that the second container's twistlock was jammed. Giron fell when the twistlock finally opened. Without the lock holding it in place, the forward end of the container suddenly removed pressure from the unstable deck, causing the brackets to retract.

Giron's new theory is that Alatortsev should have (a) warned the longshoremen that the brackets retract when the deck is lifted; and (b) warned them as soon as they destabilized the deck. Giron says that the defendant's technician, Charles Cushing, admitted that the deck likely tilted a few inches ten minutes prior to the major tilt. According to him, this initial tilt should have caused Alatortsev to warn Giron of an impending major tilt.

Irrespective of who is right about the precipitating events, Giron's new claims will be dismissed because he did not receive permission from the court to change categorically his theory of the case after more than a year of litigation.[1] No new facts have emerged to justify this departure. Giron knew as soon as he fell that Alatortsev witnessed the incident, and he never pleaded or otherwise claimed that he should have been warned.

Giron also has no admissible evidence to buttress his new theory. His technician, Donald Green, "supplemented" his original theory about installation with this unrelated assertion about warnings. In November of 2012, the court struck Green's testimony because he had offered an entirely new explanation, not a supplemental analysis.[2] It was at best inconsistent and at worst simply bought.

If the court were to allow his new theory, Giron's claims would still fail. The ship did not have to warn him that the tweendeck rested on retractable brackets. Retraction is not a defect. It is an efficient and ubiquitous design. Giron also knew about this particular deck; he had already removed every container from it except two. The stevedore's safety director, walking foreman, and gang foreman confirmed that they all knew that it retracted.

Assuming that the longshoremen are right about an initial tilt, the ship – through Alatortsev – was not obliged to warn them. Having turned the ship over to the stevedore, the ship did not have a legal duty to supervise or intervene during the longshoremen's discharging of the cargo absent extraordinary circumstances.[3]

Giron also has no evidence that Alatortsev noticed a tilt in time to warn him. He can only speculate about when Alatorsev noticed that the deck was unstable. Alatorsev says that he immediately yelled when he saw the problem. The longshoremen say that Alatortsev had

---

[1] Fed. R. Civ. P (a)(2).

[2] Dag Enterprises, Inc. v. Exxon Mobil Corp., 226 F.R.D. 95, 109 (D.D.C. 2005).

[3] Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 170–71 (1981).

to have seen an initial tilt, but they also admit that they were near the containers – some distance from Alatortsev on the other side of the tweendeck.

Giron's new theory is a guess. It is a transparent attempt to create disputed facts by conjuring a new theory of the case.

5.      *Conclusion.*

Giron may not litigate with his claims as moving targets. He also may not offer inconsistent testimony from his technician that conveniently changes to match his lawyer's new theories. Even if the court were to tolerate this mischief, the ship was not legally obliged to intervene.

Mynor Giron will take nothing from Mare Schiffahrtsgesellschaft MBH Co. K.G. M.S., JMS Shipping Company Ltd., and JMS Eight Shipping Company Ltd.

After two inadmissible technical reports and more than a dozen depositions, Giron – willingly led by his lawyer – has caused the defendants to spend $189,286.55 defending itself. The court invites a motion for a cost adjustment.[4]

Signed on March _27_, 2014, at Houston, Texas.

_____
Lynn N. Hughes
United States District Judge

---

[4] *See* Fed. R. Civ. P. 11; 28 U.S.C. § 1927 (2012); Chambers v. NASCO, Inc., 501 U.S. 32, 43–44 (1991).